```
 1
 2
 3
 4
 5
 6
 7
 8                          UNITED STATES DISTRICT COURT
 9                         CENTRAL DISTRICT OF CALIFORNIA
10   PAULA F. RIDDLEBAUGH,       )    NO. ED CV 05-650-CT
                                 )
11              Plaintiff,       )    OPINION AND ORDER
                                 )
12        v.                     )
                                 )
13   JO ANNE B. BARNHART,        )
     COMMISSIONER, SOCIAL SECURITY )
14   ADMINISTRATION,             )
                                 )
15              Defendant.       )
                                 )
16   _____)
```

17    For the reasons set forth below, it is ordered that the matter be
18 **REMANDED** pursuant to sentence four of 42 U.S.C. Section 405(g) to
19 defendant Commissioner of Social Security ("the Commissioner") for
20 further administrative action consistent with this opinion and order.

### SUMMARY OF PROCEEDINGS

22    On July 18, 2005, plaintiff, Paula F. Riddlebaugh ("plaintiff"),
23 filed a complaint seeking judicial review of the denial of benefits by
24 the Commissioner pursuant to the Social Security Act ("the Act"). On
25 July 29, 2005, the parties filed a consent to proceed before the
26 magistrate judge. On October 18, 2005, plaintiff filed a brief in
27 support of the complaint. On November 17, 2005, the Commissioner filed
28 a brief in opposition to the relief requested in the complaint.

**SUMMARY OF ADMINISTRATIVE RECORD**

**1.   Proceedings**

On October 17, 2002, plaintiff filed an application for disability insurance benefits, alleging disability since September 17, 2002 due to degenerative disc disease, fibromyalgia and osteoarthritis. (TR 54).[1] The application was denied initially and upon reconsideration. (TR 44-49).

On July 29, 2003, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). (TR 53). On June 3, 2004, plaintiff, represented by an attorney, appeared and testified before an ALJ. (TR 273-84). The ALJ also considered vocational expert testimony. (TR 284-89). On June 20, 2004, the ALJ issued a decision that, although plaintiff's impairments were "severe", plaintiff was not disabled as defined by the Act because she can perform a significant range of medium work, and specifically, can perform the jobs of assembler, liquid center (Dictionary of Occupational Titles ("DOT") No. 732.648-018) and grocery packer (DOT No. 920.687-014), and thus was not eligible for benefits. (TR 19-28). On August 23, 2004, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 14). On April 25, 2005, the request was denied. (TR 4-6). Accordingly, the ALJ's decision stands as the final decision of the Commissioner. Plaintiff subsequently sought judicial review in this court.

**2.   Summary Of The Evidence**

The ALJ's decision (TR 19-28), except as otherwise noted,

---

[1] "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

2

materially summarizes the evidence in the case.

## PLAINTIFF'S CONTENTIONS

Plaintiff contends as follows:

1. The ALJ failed to properly consider the opinions of plaintiff's treating physician, Dr. Politoske;
2. The ALJ did not properly consider the testimony of the vocational expert; and,
3. The ALJ did not properly assess plaintiff's credibility or properly consider her subjective complaints.

## STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards. Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner. Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995). The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). Remand is appropriate where additional proceedings would remedy defects in the Commissioner's decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

## DISCUSSION

### 1. The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, it is determined whether the person is engaged in "substantial gainful activity." If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.  If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work.  If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.  The person is entitled to benefits only if the

person is unable to perform other work.  20 C.F.R. §§404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

### 2. Issues

#### A. Opinions of Treating Physician

Plaintiff contends that the ALJ improperly rejected the opinions of plaintiff's treating physician, Dr. E. J. Politoske.

A treating physician's opinion is entitled to greater weight than that of an examining physician. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir, 1995)(citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)); Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir., 1987).  "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Andrews v. Shalala, 53 F.3d at 1041(citing Magallanes v. Bowen, 881 F.2d at 751.  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. §404.1527.  The opinion of a specialist about medical issues related to his or her specialty generally is given more weight than the opinion of a source who is not a specialist.  20 C.F.R. § 1527(d)(5).

"The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Andrews v. Shalala, 53 F.3d at 1041 (citing Magallanes v. Bowen, 881 F.2d at 751).  However, if the physician's opinion is uncontradicted, the opinion may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Even if the treating physician's opinion is contradicted by other doctors, the Commissioner may not reject the opinion without providing "specific and legitimate reasons" for doing so

which are supported by substantial evidence. <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001) (citations omitted).

Here, the ALJ essentially adopted the opinion of the agency consultative examiner who examined plaintiff on one occasion and who found that plaintiff was capable of lifting and carrying 50 pounds occasionally, and 25 pounds frequently and was capable of walking and standing for six hours in an eight hour day with normal breaks. (TR 23, 108-112). The ALJ also relied on the state agency medical consultant, who did not examine plaintiff and who generally agreed with the consultative examiner's findings. (TR 23, 122-130). Based on functional limitations outlined by the consultative examiner, the ALJ found that plaintiff had the residual functional capacity to perform "a significant range of medium work." (TR 25).

The ALJ rejected the opinions of plaintiff's treating physician, Dr. Politoske. Dr. Politoske opined that plaintiff had fibromyalgia, depression, degenerative joint disease, osteoporosis and anemia. (TR 152). His diagnosis was based on clinical findings of musculoskeletal pain, trigger points, fatigue and insomnia, lab work showing anemia, and X-Rays showing osteoporosis and tendonitis in the shoulders. (TR 152-154, 159). He stated that plaintiff's primary symptoms were fatigue and moderate diffuse musculoskeletal pain. (TR 152-154). Based on his clinical findings, he found that plaintiff is limited to sitting for two hours and standing for one hour in an eight hour day and plaintiff cannot stand, walk or sit continuously. (TR 155). He further found that plaintiff is capable of carrying up to 10 pounds occasionally, that plaintiff can tolerate only low stress jobs, and that plaintiff would be absent from work more than three times a month. (TR 155, 164).

1   The ALJ stated several reasons for his refusal to credit Dr.
2 Politoske's functional assessments. First, the ALJ rejected his opinion
3 because it was "not consistent with the other substantial evidence."
4 (TR 24). Even when read in combination with the additional reasons the
5 ALJ provided for rejecting Dr. Politoske's opinions, this conclusory
6 statement does not meet the requirement that the ALJ provide specific
7 and legitimate reasons supported by substantial evidence. Rollins v.
8 Massanari, 261 F.3d at 856.

9   Second, the ALJ stated that Dr. Politoske's clinical findings "are
10 principally subjective in nature." (TR 24). However, plaintiff's
11 primary impairment is osteoarthritis with fibromyalgia. The Ninth
12 Circuit has recognized that the diagnosis of fibromyalgia is based on
13 plaintiff's subjective complaints and that "there are no laboratory
14 tests to confirm the diagnosis." Benecke v. Barnhart, 379 F.3d 587,
15 589-90 (9th Cir. 2004). Accordingly, in this circuit, a lack of
16 objective medical evidence of fibromyalgia, by itself, is not a
17 legitimate reason for rejecting a treating physician's findings related
18 to the disorder. Id., at 594.

19   Third, the ALJ also found that Dr. Politoske's findings were "not
20 consistent with the severe restrictions as reported." (TR 24). In
21 support of this finding, the ALJ pointed to the fact that Dr. Politoske
22 did not refer plaintiff to a pain clinic or "other significant forms of
23 treatment" and that plaintiff did not require emergency room care or
24 hospitalization for exacerbation of pain. Id. However, Dr. Politoske
25 did refer plaintiff to a rheumatologist (TR 162), and, at the time of
26 her hearing, plaintiff was researching how to see a rheumatologist
27 through her insurance. (TR 281). Further, contrary to the ALJ's
28

7

findings, the record reflects that plaintiff did visit the emergency room on at least two occasions for pain associated with her condition. (TR 209).

In addition, plaintiff's medical records indicate that she consistently complained of pain all over her body and those records date back to at least six months before she stopped working and seven months before she filed her application for benefits. (See, e.g., TR 198, 201, 208, 211, 218-19, 250, 266). Plaintiff's pain was severe enough that at times she was taking the narcotic painkiller, Vicodin. (See TR 176). An MRI of plaintiff's spine shows degenerative disc disease or signs of arthritis at L3-4 and L5-S1. (TR 206). Dr. Politoske's opinion that as a result of plaintiff's pain and medications, she will have a hard time with tasks that require concentration, such as mathemetics or even counting money (TR 175), is consistent with the consultative psychologist's findings on examining plaintiff. See TR 102-106 (plaintiff's ability to perform complex tasks is markedly impaired and her ability to maintain concentration for simple tasks is mildly impaired and plaintiff is not reasonably capable of managing her funds).

Moreover, though the agency consultative examiner, Dr. Rita Pradhan, found that plaintiff had the strength required to essentially perform medium exertional-level work, her clinical findings are consistent with Dr. Politoske's. She found multiple areas of pressure point tenderness and a positive straight leg test result on examination of plaintiff. (TR 110). The X-Rays ordered by the consultative examiner showed evidence of splinting of the spine to the right suggesting muscle spasm. (TR 113).

The ALJ also questioned Dr. Politoske's findings and opinions

related to plaintiff's conditions because Dr. Politoske is a specialist in internal medicine and gastroenterology. However, the ALJ relied on the opinion of the consultative examiner, who is a specialist in internal medicine and endocrinology. (TR 23, 112). As the Ninth Circuit recently noted, rheumatology is the relevant speciality for fibromyalgia.[2] See Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (citation omitted). "Specialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community." Id. (citation omitted).

Finally, the ALJ objected to Dr. Politoske's reference to plaintiff's depression in his evaluation of her limitations because plaintiff has received no treatment from a psychiatrist or psychologist. (TR 24). However, the record is unclear as to whether plaintiff's complaints of depression significantly impacted Dr. Politoske's conclusions.[3]

In sum, although the Commissioner's decision is generally well-reasoned, the Commissioner erred in the reasons provided for rejecting the opinion of plaintiff's treating physician. Accordingly, remand is warranted. On remand the Commissioner may wish to have plaintiff evaluated by a rheumatologist and develop the record with respect to the

---

[2] According to the consultative examiner's report, plaintiff reported that she has had joint pains and fibromyalgia for thirteen years and was originally diagnosed by a rheumatologist. (TR 108).

[3] Although Dr. Politoske found that plaintiff's depression was an emotional factor that affected her (TR 162), he stated in a 9/27/04 evaluation that plaintiff had essentially good functioning in all psychological areas and is "occupationally and socially effective." (TR 270). Accordingly, it is not clear whether Dr. Politoske considered plaintiff's depression to be a significant cause of her functional limitations.

9

weight Dr. Politoske gave to plaintiff's complaints of depression in reaching his conclusion that she is disabled.  In any event, on re-evaluation, if the Commissioner determines that the opinions of Dr. Politoske should be rejected, then the Commissioner should provide legally sufficient reasons for doing so.  Rollins v. Massanari, 261 F.3d at 856.

### B.   Vocational Expert Testimony

Plaintiff contends that the ALJ gave the vocational expert a "vague and ambiguous" hypothetical when he asked the expert to assume the mental limitations set forth in the state agency psychiatrist's report (in particular, that plaintiff was moderately limited in her ability to complete a normal workday) without defining the term "moderately limited."  (Brief in Support of Complaint at 6).  Plaintiff further maintains that "the use of the phrase moderately limited in [plaintiff's] ability to complete a normal workday" would "most assuredly at least equal the absence rate" of missing more than two days per month, which the vocational expert testified would render plaintiff unable to perform any work.  Id.  Accordingly, plaintiff claims that in finding that plaintiff was not disabled, the ALJ failed to properly consider all the vocational expert's testimony.

The assumptions contained in an ALJ's hypothetical to a vocational expert must be supported by the record; otherwise, the opinion of the vocational expert that the plaintiff has a residual working capacity has no evidentiary value.  Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Hypothetical questions posed to the vocational expert must set out all of the plaintiff's limitations and restrictions.  Embrey v. Bowen, 849 F.2d at

422. The hypothetical question must be "accurate, detailed and supported by the medical record." Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) (citing Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999)).

Here, the ALJ asked the vocational expert to assume that plaintiff was "moderately limited in her ability to complete a normal workday and workweek without interruption from psychologically based symptoms" in reference to the findings in the state agency psychiatrist's report (TR 146). (TR 285-86). The vocational expert testified that plaintiff would be able to find work with such moderate limitations, but the ALJ did not clarify the number of monthly absences such moderate limitations would cause. (TR 286). The vocational expert did not seek clarification of the hypothetical. The vocational expert later testified that assuming plaintiff's limitations caused her to be absent from work for more than two days a month, she would be unable to work. (TR 288).

These responses are not necessarily inconsistent. Generally a limitation that causes an unreasonable number and length of rest periods or and undue number of interruptions or distractions would be a "marked" limitation. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00. However, since the matter is being remanded, on remand the Commissioner may wish to clarify the meaning of the terms "moderately limited" in his hypothetical to the vocational expert. In addition, the court observes that, in response to questioning by plaintiff's counsel, the vocational expert testified that there is unskilled, sedentary work available that would fit the limitations provided in the ALJ's hypothetical. (TR 288). On remand, the Commissioner may want to ask the vocational expert to

identify jobs in that category.

### C. Plaintiff's Testimony

Plaintiff also contends that the ALJ improperly evaluated the credibility of plaintiff's symptom testimony.

The Commissioner evaluates a plaintiff's symptom testimony under a two-step analysis. First, a plaintiff in a social security case must "produce medical evidence of an underlying impairment which is reasonably likely to be the cause of the alleged pain." Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

Second, once the plaintiff produces this evidence, the medical findings need not support the severity of the symptoms, and the ALJ may not discredit the plaintiff's allegations of the severity of the pain solely on the ground that the allegations are unsupported by objective medical evidence. Id. at 346-47. In the absence of affirmative evidence that a plaintiff is malingering, the Commissioner's reasons for rejecting the plaintiff's testimony must be clear and convincing. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996). If the ALJ rejects the plaintiff's allegations as not credible, he or she "must specifically make findings which support this conclusion." Bunnell v. Sullivan, 947 F.2d at 345. The ALJ must state specifically what symptom testimony is not credible and what facts in the record lead to that conclusion. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). See also Lester v. Chater, 81 F.3d at 834 ("[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints").

The ALJ found that plaintiff has "medically determinable impairments which could be expected to produce some symptomatology,

including pain," but that plaintiff's testimony "as to the extent, intensity, and duration resulting in functional limitations" is not credible due to "significant inconsistencies in the record as a whole." (TR 23).  The ALJ's finding was based in part on his assertion that "common side effects of prolonged and/or chronic pervasive pain are weight loss and diffuse muscle atrophy or wasting."  While this conclusion has some common sense appeal, the rejection of plaintiff's testimony on this basis is not supported by substantial evidence of record because there is no supporting medical evidence for it.[4]

In addition, the ALJ found that plaintiff had not undergone surgery or hospitalizations for any disorder and that plaintiff was helped somewhat by her medications.  While the ALJ correctly observed that plaintiff has not undergone surgery or been hospitalized, plaintiff was prescribed strong medications for her pain, including Darvocet and Vicodin.  (TR 176, 209).  Moreover, plaintiff testified that the pain medication "takes a little bit of the edge off," but did not testify that it totally relieved her pain or significantly reduced her functional limitations.  (TR 278).

The ALJ also relied on certain inconsistencies between plaintiff's testimony about her limitations and the medical evidence.  The court concludes that while examples given by the ALJ do show some

---

[4] Defendant cites Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) for the proposition that the court may rely on lack of atrophy and wasting in evaluating the credibility of claims of debilitating pain.  In Meanel, however, the plaintiff claimed that her pain was so severe that it required her to lie in a fetal position all day.  Id.  The court cited the ALJ's finding that Meanel did not exhibit muscular atrophy or any other physical signs of a totally incapacitated individual.  Id.  Here, plaintiff does not claim to be totally incapacitated and lying in a fetal position all day.  Rather she claims to be unable to perform work on a sustained basis for an eight hour day.

13

1 inconsistencies in plaintiff's testimony, those inconsistencies are not
2 significant enough to amount to clear and convincing reasons for
3 completely rejecting plaintiff's testimony concerning her limitations.
4 For example, plaintiff testified that she could lift only two pounds.
5 The ALJ pointed out that her doctor stated that she could occasionally
6 lift ten.  Plaintiff clarified and stated "No.  Occasionally I can.
7 Most of the time it hurts to lift more."  (TR 278).  In addition, the
8 ALJ found that her statement that occasionally her "hand gives out" is
9 not supported by any medical evidence of motor or sensory deficits.  (TR
10 23).  However, plaintiff testified that her hand "gives out" when her
11 arm hurts.  (TR 282) The record shows that plaintiff felt her arm pain
12 was so severe on at least two occasions that she went to the emergency
13 room.  (TR 209).  The absence of testing revealing measurable sensory or
14 motor deficits is not necessarily inconsistent with plaintiff's
15 subjective complaint that her fibromyalgia causes so much pain in her
16 arm on occasion that her hand "gives out."  See Benecke v. Barnhart,
17 379 F.3d at 594 (ALJ's requirement of objective medical evidence to
18 support symptom testimony of fibromyalgia sufferer was in error because
19 fibromyalgia is a disease that eludes such measurement).

20    The ALJ also acknowledged that plaintiff had side effects from her
21 medications, but observed that she was able to drive to the store, go to
22 doctor's appointments, occasionally go out to dinner and engage in light
23 housework.  (TR 23).  The ALJ's findings appear to be partly based on
24 plaintiff's Daily Activities Questionnaire, in which she also reported
25 her activities as being very limited and stated that she had significant
26 help from her daughter, son-in-law and husband.  (TR 74-85).
27    In sum, taking his reasons as a whole, the ALJ erred in assessing
28

14

plaintiff's credibility and finding that it was so compromised that plaintiff's testimony was entitled to essentially no weight and that plaintiff was therefore able to perform medium work exertional-level jobs, such as being a grocery packer. On remand, if the Commissioner rejects plaintiff's testimony, the Commissioner should provide legally sufficient reasons for doing so. Lester v. Chater, 81 F.3d at 834.

### REMAND IS APPROPRIATE IN THIS CASE

The decision whether to remand a case for additional evidence is within the discretion of the court. Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Remand is appropriate if the record is incomplete and additional proceedings would remedy defects in the Commissioner's decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

Having considered the record as a whole, it appears that the present record is insufficiently developed.

### CONCLUSION

Accordingly, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) to the Commissioner for further administrative action consistent with this opinion.

DATED: 11/22/05

/ S /
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE